# Exhibit B

RUSSELL WERTZ,
**Individually and on behalf of all others
similarly situated,**

**Plaintiff,**

v.

**GOLD MEDAL ENVIRONMENTAL OF
PA INC., and PARKS GARBAGE
SERVICE INC.,**

**Defendants.**

**Case No. 2:24-cv-02352-MAK**

**Hon. Mark A. Kearney**

**COLLECTIVE ACTION
PURSUANT TO 29 U.S.C. § 216(b)**

## AMENDED SETTLEMENT AND RELEASE AGREEMENT

IT IS HEREBY STIPULATED AND AGREED by and between Russell Wertz, on behalf of himself and all other similarly situated members of the Settlement Collective as defined below, on the one hand, and Gold Medal Environmental of PA Inc., and Parks Garbage Service, Inc. (herein "Defendants") (collectively referred to as the "Settling Parties"), on the other hand, as set forth below:

**I.      The Conditional Nature of This Agreement**

This Amended Settlement and Release Agreement and all associated exhibits or attachments (herein "Agreement") is made for the sole purpose of attempting to consummate settlement of this action on a collective basis.  This Agreement, and the settlement it evidences, is made in compromise of disputed claims.  Because this action was and is pled as a collective action and because this settlement will result in the release of claims, including those under the Fair Labor Standards Act ("FLSA"), the Settling Parties will seek approval of this settlement from the Court.  Accordingly, the Settling Parties enter into this Agreement and associated settlement on a conditional basis.  In the event that the Court does not execute and file the Order Granting Approval of Settlement, or in the event that the associated Judgment does not become final for any reason, this Agreement shall be

deemed null and void *ab initio*, it shall be of no force or effect whatsoever, it shall not be referred to or utilized for any purpose whatsoever, and the negotiation, terms, and entry of the Agreement shall remain subject to the provisions of Federal Rule of Evidence 408.

Defendants deny all of the claims as to liability, damages, penalties, interest, fees, restitution and all other forms of relief, as well as the allegations that Named Plaintiff has asserted against it in *Russell Wertz et al. Gold Medal Environmental of PA Inc., et al.*, No. 2:24-cv-02352-MAK (E.D. Pa.) (the "Litigation"). The Settling Parties have agreed to resolve the Litigation via this Agreement, but to the extent this Agreement is disapproved by the Court, deemed void, or does not otherwise take effect, or if the Court in any way fails to grant binding and final approval of the settlement agreement and/or dismiss the Lawsuit with prejudice, the Settling Parties reserve all rights, claims and defenses. Defendants reserve all rights to challenge all such claims and allegations in the Litigation upon all procedural and factual grounds, including without limitation the ability to challenge class, collective, or representative treatment on any grounds or to assert any and all defenses or privileges. The Named Plaintiff and Collective Counsel agree that Defendants retain and reserve these rights and agree not to take a position to the contrary. The Settling Parties also agree that in the event the Court does not approve this settlement, the Settling Parties will not make any substantive reference to this proposed settlement when advocating their positions in the litigation of this matter.

## II.     The Parties to this Agreement

This Agreement (with the associated exhibits) is made and entered into by and among the following Settling Parties: (i) the Named Plaintiff (on behalf of himself and each of the Settlement Collective Members), with the assistance and approval of Collective Counsel; and (ii) Defendants, with the assistance and approval of their counsel of record in the Litigation. The Agreement is intended by the Settling Parties to result in the final resolution with prejudice of the Litigation pursuant to the

Judgment and to fully, finally and forever resolve, discharge and settle the Released Claims upon and subject to the terms and conditions herein.

## III.    The Litigation

On May 31, 2024, Named Plaintiff Wertz filed a collective/class action lawsuit in the United States District Court for the Eastern District of Pennsylvania. On July 2, 2024, Defendants filed their Answer and Affirmative Defenses to Plaintiff's Complaint. The Named Plaintiff filed his opposed motion for conditional certification of a collective action pursuant to 29 U.S.C. § 216(b), and on August 28, 2024, the Court conditionally certified a collective.

On October 3, 2024, the Parties attended mediation via Zoom with Mediator Dennis A. Clifford. During mediation, the Parties reached a resolution on behalf of Named Plaintiff, the Opt-In Plaintiffs, and the Putative Collective Members.

On October 14, 2024, the Parties executed a Settlement and Release Agreement and filed it, together with their Motion for Approval of FLSA Settlement with the Court. In an Order dated October 17, 2024, this Court raised certain concerns regarding certain provisions in the filed agreement. Taking those concerns under consideration, the Parties agreed to amend the agreement to remove/modify the problematic provisions, leading to the drafting and execution of this Agreement.

This Agreement is intended to result in the creation of a collective action of all Persons in the Collective as defined below.  This Agreement, if approved by the Court, will result in the resolution of the Litigation in its entirety, and such resolution shall be with prejudice for all Settlement Collective Members, and the waiver and release of all Released Claims (including without limitation any state law

claims pled initially in the Litigation or otherwise) shall apply to all Settlement Collective Members as defined herein.[1]

## IV.  Defendants' Denial of Wrongdoing or Liability

Defendants deny all of the claims and contentions alleged by the Named Plaintiff in this case. Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted and expensive.  Defendants have also taken into account the uncertainty and risks inherent in any litigation, especially in national, collective action cases like this Litigation.  Defendants have therefore determined that it is desirable and beneficial to it that the Litigation be settled in the manner and upon the terms and conditions set forth in this Agreement.

## V.  Claims of Plaintiff and Benefits of Settlement

The Named Plaintiff and Collective Counsel believe that the claims presently asserted in the Litigation have merit. However, the Named Plaintiff and Collective Counsel recognize and acknowledge the expense and length of the type of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals.  The Named Plaintiff and Collective Counsel have also taken into account the uncertain outcome and the risk of any litigation, as well as the difficulties and delays inherent in such litigation, especially in collective action litigation. Based upon their evaluation, the Named Plaintiff and Collective Counsel have determined that the settlement set forth in the Agreement is in the best interests of the Named Plaintiff and the Collective.

## VI.  Terms of Agreement and Agreement of Settlement.

NOW, THEREFORE, IT IS HEREBY FURTHER STIPULATED AND AGREED by and between the Named Plaintiff (individually and on behalf of the Settlement Collective Members) and

---

[1] Settlement Collective Members will release all Released Claims, which include without limitation, the state law claims asserted or that could have been asserted on a putative class basis in the Original Complaint in the Litigation.

Defendants, with the assistance of their respective counsel or attorneys of record, that, as among the Settling Parties, including all Settlement Collective Members, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice, as to all Settling Parties, upon and subject to the terms and conditions of the Agreement and the Judgment.

1.    Definitions.

As used in all parts of this Agreement, the following terms have the meanings specified below:

1.1.1    **"Claims Administrator" or "Settlement Administrator"** means the third-party claims administration firm of ILYM Group, Inc.

1.1.2    **"Collective"** means all Waste Disposal Drivers who worked for Gold Medal Environmental of PA Inc. and/or Parks Garbage Service Inc., from May 31, 2021, until the date this Agreement is executed ("FLSA Putative Collective Members") and all individuals who have previously filed a consent to join this Lawsuit ("Named Plaintiff and the Opt-In Plaintiffs").

1.1.3    **"Collective Counsel"** means the law firm of Anderson Alexander, PLLC. And Law Office of Adam S. Levy, LLC.

1.1.4    **"Collective Member" or "Member of the Collective"** means a Person who falls within the definition of the Collective.

1.1.5    **"Defendants"** means Gold Medal Environmental of PA Inc. and Parks Garbage Service Inc.

1.1.6    **"Defendants Releasees" or "Released Parties"** means Defendants and their past, present and/or future, direct and/or indirect, officers directors, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers.

1.1.7 **"Court"** means the United States District Court for the Eastern District of Pennsylvania.

1.1.8 **"Effective Date"** means the date on which the last of all of the following events have occurred, provided that each and every of the following events occurred: (i) counsel for Defendants is in physical receipt of a fully executed copy of this Agreement, and a completed and signed IRS Form W-9 from Anderson Alexander, PLLC; (ii) Named Plaintiff has filed with the Court a motion for approval of the settlement seeking approval of this settlement and dismissal of the Lawsuit with prejudice, and (iii) the Court has entered a final order approving the Agreement and issued the Judgment dismissing the Lawsuit with prejudice.

1.1.9 **"Named Plaintiff," "Plaintiff," or "Collective Representative"** means Russell Wertz.

1.1.10 **"Opt-In Plaintiffs"** means those individuals who had opted into the Litigation as of October 3, 2024, including Named Plaintiff Russell Wertz. Opt-In Plaintiffs will be Collective Members as long as they have been identified as Waste Disposal Drivers of Defendants who worked at least one Qualifying Workweek from May 31, 2021, until the Effective Date.

1.1.11 **"Judgment"** means the judgment to be rendered by the Court pursuant to this Agreement. If entered and filed by the Court, the Order of Approval will be considered a Judgment. This Judgment shall be a judgment for purposes of Rule 58(a) of the Federal Rules of Civil Procedure.

1.1.12 **"Last Known Address"** means the most recently recorded mailing address for a Collective Member as contained in the employment personnel records maintained by Defendants.

1.1.13 **"Maximum Settlement Amount"** or **"The Maximum Settlement Amount" or "Total Settlement Amount"** shall mean the maximum total amount that can be paid

by Defendants pursuant to this Agreement.  It is agreed that the Maximum Settlement Amount is $575,000.00 (Five Hundred Seventy-Five Thousand Dollars and No Cents), excluding the employer share of payroll taxes on any settlement payment, which Defendants shall pay separately.  It is understood and agreed that under the terms of this Agreement, Defendants will pay less than this Maximum Settlement Amount if fewer than all Collective Members become Settlement Collective Members and any money allocated to the payments for Collective Members who do not become Settlement Collective Members shall remain with or revert to Defendants, but Defendants will not under any circumstances pay more than this Maximum Settlement Amount, excluding payroll taxes. The Total Settlement Amount shall cover all of the expenses associated with the settlement for the following items:  (1) the maximum total gross amount that Defendants will pay (subject to the occurrence of the Effective Date) to Settlement Collective Members, including Named Plaintiff (*i.e.*, the Net Settlement Fund); (2) the maximum total gross amount Defendants will pay (subject to the occurrence of the Effective Date) to Collective Counsel for attorneys' fees, costs and all other litigation expenses; (3) an enhancement payment to the Named Plaintiff, not to exceed $2,500.00 and subject to a general release; and (4) settlement administration costs to the Claims Administrator.

      1.1.14  **"Notice Mailing Deadline"** means the date thirty (30) calendar days after the Effective Date.

      1.1.15  **"Net Settlement Fund"** means the total gross amount that shall be paid to Settlement Collective Members who cash the settlement check.

      1.1.16  **"Notice" or "Notice of Settlement"** means a notice to be approved by the Court, substantially in the form attached hereto as Exhibit A.

      1.1.17  **"Order of Approval" or "Order Granting Approval of Settlement" or "Approval Order"** means an order to be entered and filed by the Court entitled "Order Granting

Plaintiff's Motion to Dismiss with Prejudice and for Approval of Settlement Agreement," substantially in the form attached hereto as Exhibit B.

      1.1.18   **"Approval Date"** shall mean the date that the Court enters the Order of Approval.

      1.1.19   **"Payroll Taxes"** shall mean the payroll taxes and associated payments that an employer is required to make when making standard wage payments to employees, i.e., the employer share of the payroll tax.

      1.1.20   **"Person"** means a natural person.

      1.1.21   A **"Qualifying and Payable Work Week"** shall be the work week variable used to calculate the Settlement Sum, and this Variable shall be calculated as: one Qualifying and Payable Work Week shall be credited for each Qualifying Work Week worked anywhere in the United States by a Collective Member. The total number of Qualifying and Payable Work Weeks multiplied by the Settlement Sum Variable shall equal the Maximum Settlement Portion for Payments to Collective Members.

      1.1.22   A **"Qualifying Work Week"** is any calendar week during the Collective Period for which a Collective Member received payment from Defendants or any of its U.S. subsidiaries for forty hours or more of active work (as opposed to vacation or leave time).

      1.1.23   A **"Reasonable Address Verification Measure"** means the utilization of the National Change of Address Database maintained by the United States Postal Service to review the accuracy of and, if possible, update a mailing address.

      1.1.24   **"Released Claims"** means any and all claims, rights, demands, liabilities, and causes of action that are alleged, or reasonably could have been alleged based on the facts and claims asserted in the operative Complaint in the Lawsuit, including claims under the Fair Labor Standards Act ("FLSA"), claims under the theories of *quantum meruit*, unjust enrichment, conversion, breach of

contract, theft of labor, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, all claims for costs, attorneys' fees and/or interest, or any other benefits against Defendants or any Released Parties.

1.1.25  **"Settlement Collective"** means the group of all of the Collective Members who will release and waive all Released Claims and become subject to and bound by the Judgment.

1.1.26  **"Settlement Collective Member" or "Member of the Settlement Collective"** means any Person who returns their Claim Form(s), including their W-2 Form and W-9 Form, and cashes their Settlement Check.

1.1.27  **"Settlement Sum"** means the total amount allocated to each Collective Member and due to each individual Settlement Collective Member, which shall be the product of the Settlement Sum Variable multiplied by the number of Qualifying and Payable Work Weeks worked by that Collective Member. Because of the withholdings and other tax adjustments described herein, the net amount ultimately received by each Settlement Collective Member will be less than his or her Settlement Sum.

1.1.28  **"Settlement Check"** means the Settlement Sum less any withholdings or other tax adjustments that the Collective members will receive with the Notice of Settlement.

1.1.29  **"Settlement Sum Variable"** means the number which is the quotient of the Maximum Settlement Portion for Payments to Collective Members divided by the total number of Qualifying and Payable Work Weeks for all Collective Members, regardless of whether they actually become Settlement Collective Members.

1.1.30  **"Settling Parties"** means (a) Defendants, on the one hand; and (b) Named Plaintiff, individually and on behalf of all Members of the Settlement Collective, on the other hand.

1.1.31 **"Updated Address"** means a mailing address that was updated via a Reasonable Address Verification Measure or via an updated mailing address provided by the United States Postal Service or a Collective Member.

1.1.32 **"Wages" or "wages"** means any form of compensation for work performed, including without limitation regular or premium wages.

2. The Settlement.

2.1 *Approval of the Settlement and Authorization for Notice to the Collective.*

2.1.1 Within five (5) business days of the final execution of this Agreement, Named Plaintiff and Defendants, through their counsel of record in the Litigation, shall file this Agreement with the Court and jointly move for approval of this Agreement.

2.1.2 As part of the approval process, Collective Counsel will request attorneys' fees and litigation expenses in the amount of no more than $205,000.00 of the Gross Settlement Amount. Defendants will not oppose this request.

2.1.3 Collective Counsel will also request approval of a modest Enhancement Award of $2,500.00 for Named Plaintiff, to compensate him for his role in the litigation and for his execution of a General Release.

2.1.4 Via this submission, and a supporting motion, the Settling Parties, through their counsel of record, will request that the Court enter the Approval Order.

2.1.5 Failure of the Court to enter the Approval Order in its entirety or in a substantially similar form following the full efforts of the Settling Parties to obtain such entry will be grounds for the Settling Parties to terminate the settlement and the terms of this Agreement.

2.1.6 Unless the Agreement is voided per its terms, the Settling Parties and their counsel will seek approval of the Agreement and entry of the Judgment by the Court.

2.1.7    Settling Parties agree to waive all appeals arising out the approval of this Agreement and/or the entry of Judgment by the court.

2.1.8    The Settling Parties shall make all reasonable efforts to secure entry of the Order of Approval and Judgment.  If the Court rejects the Agreement, or fails to approve and also enter the Order of Approval, or enter the Judgment, this Agreement shall be void *ab initio*, and Defendants shall have no obligations to make any payments under the Agreement.  In the event that the Agreement becomes void for this or any other reason, Defendants retain all rights to challenge all claims and allegations in the Litigation upon all procedural and factual grounds, including without limitation, the ability to challenge class or collective action treatment on any grounds or assert any and all defenses or privileges.

2.2    *Notice to Collective Members*

2.2.1    Within fifteen (15) calendar days of the Effective Date, Defendants shall prepare and provide to the Claims Administrator the name, Last Known Address, Social Security number, and the total number of Qualifying Work Weeks for each Collective Member who will receive Notice from the Claims Administrator ("Collective Data") so that the Claims Administrator can calculate their respective Settlement Sums and engage in the processing and mailing of each Notice of Settlement and Settlement Check.

2.2.2    The Claims Administrator shall calculate Defendants share of Payroll Taxes and provide that information to Defendants within five (5) business days of receipt of the Collective Data.  By approving this Agreement, the Court will be deemed to have authorized Defendants to provide the Claims Administrator with the Social Security Number of each Collective Member.

2.2.3    The Notice shall include language stating that pertinent law requires Defendants to refrain from retaliating against any Collective Member for any actions taken or not

taken in response to the Notice or in regard to the Litigation, and that Defendants have agreed to abide by this obligation.

2.2.4    The Notice of Settlement, Claim Form(s), W-2s, and W-9s shall be mailed by regular U.S. Mail to the Collective Members within thirty (30) days of the effective date ("Notice Mailing Deadline").

2.2.5    The Notice Mailing Deadline is the last date for the Claims Administrator to mail the Notices to the Last Known Address of each Collective Member.

2.2.6    All costs of mailing the Notices, which shall be the fees charged by the Claims Administrator, the cost of the envelopes in which the Notice will be mailed, the cost of reproducing the Notice, and the cost of postage to send the Notice, shall be deducted from the Maximum Settlement Amount.

2.2.7    Each Collective Member shall have forty-five (45) calendar days from the date the Claim Form(s) were mailed to return them to the Claims Administrator ("Claims Deadline").

2.2.8    Named Plaintiff will not receive a Notice of Settlement and will instead receive his Settlement Check(s) as part of this Agreement rather than receiving mailed Notice.

2.3    <u>Settlement Checks</u>

2.3.1    The Claims Administrator shall send Settlement Check(s) to the Collective Members who timely returned a claim form via US First Class Mail within five (5) business days of the conclusion of the Notice Period.

2.3.2    Checks issued to Collective Members pursuant to this Agreement shall remain negotiable for a period of sixty (60) calendar days from the date of mailing.

2.3.3    For each Collective Member who does not cash his or her check within the 60-day period for doing so, and there is no agreement for late payment or to permit the Collective

Member to cash his or her Settlement Check after the expiration of the 60-day period, their Settlement Check shall be void and they will not become a Settlement Collective Member.

2.3.4    In any dispute over whether a Collective Member received his or her Settlement Check, Defendants shall be entitled to a presumption, rebuttable upon counter-proof, that the Collective Member received his or her Settlement Check, if it or the Claims Administrator on Defendants' behalf can show that all required address verification measures were taken consistent with this Agreement and the final address to which the check was sent was consistent with those measures. Collective Members are obligated to inform the Claims Administrator of any update in their mailing address and will be so informed in the Notice.

2.3.5    Within fifteen (15) calendar days of the Claims Deadline, the Claims Administrator shall issue a Settlement Check to each Collective Member who timely returned the necessary Claim Forms.

2.3.6    Each Settlement Check will include an endorsement that states as follows: "I acknowledge that I have read the Notice of Settlement and understand that by endorsing and depositing this check, I agree to participate, or opt-in to, the settlement of the lawsuit entitled *Wertz, et al. v. Gold Medal Environmental of PA Inc. et al.*, Case No. 2:24-cv-02352 (E.D. Pa.).

2.3.7    The Settlement Check sent to each Collective Member shall issue payment through the Claims Administrator to each Collective Member in the gross amount of his or her relevant Settlement Sum less applicable taxes.

2.3.8    Any amounts of the Maximum Settlement Portion for Payments that are not claimed shall remain the property of or revert to Defendants, and any finding to the contrary will be a ground for Defendants to void the settlement.  As such, if fewer than one hundred percent of Collective Members become Settlement Collective Members, then Defendants will pay less than the Maximum Settlement Amount, and the funds allocated to Collective Members who do not become

Settlement Collective Members will revert to Defendants. This Agreement and the associated Judgment do not and will not create any unpaid residue or unpaid residual, and no distribution of such shall be required. Any finding to the contrary will give Defendants the option to void this Agreement.

### 2.4 *Payment to Collective Members*

2.4.1 Only Named Plaintiff and those Settlement Collective Members who cash their Settlement Checks shall be subject to the Judgment. It is agreed and understood that if fewer than one hundred percent (100%) of Collective Members become Settlement Collective Members, then Defendants will pay less than the Maximum Settlement Amount. Collective Members who do not cash their Settlement Checks shall be excluded from the Settlement Collective, shall be deemed to have forever waived their rights to be Settlement Collective Members and to receive payment under this settlement, shall have no further role in the Litigation, and for all purposes shall be regarded as if they never were parties to this Litigation. The Settling Parties hereby agree that such funds represent settlement payments for matters disputed in good faith, not uncontested wage payments, and they shall not be subject to escheat rules, *cy pres*, or other distribution not provided for in this Agreement.

2.4.2 After sixty (60) calendar days have passed from the issuance of Settlement Checks, the Claims Administrator shall provide proof for each Settlement Collective member that cashed their respective Settlement Check to Defendants' Counsel with copies to Collective Counsel

2.4.3 The Claims Administrator shall also provide the Parties a register listing all Settlement Collective Members, and the payment amount made to each Settlement Collective Member.

### 2.5 *Taxes*

2.5.1 Those payments (or portions thereof) allocated to the settlement of claims for unpaid wages (a) shall be subject to required withholdings and deductions, and so the net amounts payable will be less than the gross amounts; and (b) shall be reported by the Claims Administrator in

the year of payment as wage income to Settlement Collective Members on a Form W-2 or analogous form. Those payments (or portions thereof) allocated to all other claims, including without limitations claims for penalties, liquidated damages, interest and other non-wage recovery (a) shall not be subject to withholdings and deductions, and so the net amounts payable will be equal to the gross amounts; and (b) shall be reported by the Claims Administrator in the year of payment as non-wage income to the Settlement Collective Members on a Form 1099 or analogous form.

2.5.2 The Payroll Taxes on the wage portion of these payments to Settlement Collective Members shall be paid by Defendants in addition to the Maximum Settlement Amount, and any taxes calculated or paid with respect to Collective Members who do not become Settlement Collective Members will revert or be refunded to Defendants. Other than as set forth above, Defendants will not make, from the Settlement Sum sent to each Collective Member, any deductions, withholdings or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Order of Approval by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Any amount paid to Settlement Collective Members shall not create any credit or otherwise affect the calculation of any deferred compensation, benefit, or other compensation plan provided by Defendants.

2.5.3 The Settlement Sum shall be allocated for tax reporting as follows: (i) one-half of each payment will be reported as wage income on an IRS Form W-2, i.e., a payment in settlement of claims for unpaid wages, which will be subject to legally required withholdings (thereby causing the net amount paid to each Settlement Collective Member to be less than the gross amount owed); and (ii) the other one-half will be reported as non-wage income on an IRS Form 1099, i.e., a payment in settlement of claims for interest, penalties, and/or liquidated damages, which will not be subject to withholdings. Other than these applicable deductions and reporting, which the Claims Administrator

will undertake on behalf of Defendants, Settlement Collective Members will be entirely responsible for any tax obligations associated with these payments that are owed by them. It is understood and agreed that Defendants has made no representations concerning the tax implications of any payments to be made pursuant to this Agreement, and the Notice will advise Collective Members of their opportunity to consult a tax expert.

2.5.4    The Claims Administrator, on Defendants' behalf, shall report each payment made pursuant to this Agreement to government authorities, including the Internal Revenue Service, as required by law, and the Claims Administrator shall make all legally required deductions and/or withholdings.

2.5.5    Other than the withholding and reporting requirements set forth in this Section, Named Plaintiff and the Settlement Collective Members shall be solely responsible for the reporting and payment of any federal, state and/or local income or other tax or any other withholdings, if any, on any of the payments made pursuant to this Agreement that are owed by them. As such, Named Plaintiff and the Settlement Collective Members are required to pay (and Defendants shall not be required to pay) any and all claims, demands, obligations, and liabilities for such taxes, if any, for taxes owed by Named Plaintiff and the Settlement Collective Members, including, but not limited to, taxes, levies, assessments, garnishments, fines, interest, attorneys' fees and costs owed by Named Plaintiff and the Settlement Collective Members, if any, or incurred by Defendants. Defendants makes no representations, and it is understood and agreed that Defendants has made no representations, as to the taxability of any portions of the settlement payments to any Settlement Collective Member, the payment of any costs or attorneys' fee awards, any payments to Named Plaintiff, or any other payments made pursuant to this Agreement. Named Plaintiff and Collective Counsel agree that the Collective Members have an adequate opportunity to seek tax advice prior to cashing their Settlement Checks.

2.5.6    Defendants have not made any representations regarding the taxability of any payments made pursuant to this Settlement Agreement. Named Plaintiff and the Settlement Collective Members are solely responsible for the timely payment of all taxes owed by each of them, if any, which have been due, or which may become due to any governmental authority from receipt of any funds received from Defendants pursuant to this Agreement.  Named Plaintiff and each of the Settlement Collective Members hereby agree to indemnify, pay the costs of defense, and hold Defendants harmless from and against any and all claims, demands, obligations, and liabilities for such taxes, if any, for taxes owed by Named Plaintiff or the Settlement Collective Members, respectively, including, but not limited to, taxes, levies, assessments, garnishments, fines, interest, attorneys' fees and costs owed by Named Plaintiff or the Settlement Collective Members and incurred by Defendants, if any. However, the Settlement Collective Members are not responsible for any federal, state, or local tax liability of Defendants. and Defendants will indemnify and hold the Settlement Class Members harmless from, and will reimburse the Settlement Class Members for, any and all liability of whatever kind incurred by the Settlement Class Members as a result of any tax obligations of Defendants, including, but not limited to, taxes, levies, assessments, fines, interest, attorneys' fees and costs owed by Defendants, if any.

2.6    *Releases*

2.6.1    Upon the Approval Date, Named Plaintiff shall be deemed to have fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Claims existing at the time of the Approval Date.  Upon cashing their Settlement Check, each Settlement Collective Member shall be deemed to have consented to join the action, and by operation of both the releases contained in the Notice of Settlement and also the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Claims existing through the date the Court enters and files the Order of Approval.

2.6.2    By the execution of this agreement, should the Court enter an Order of Approval, Named Plaintiff further agrees to release Defendants and Released Parties from any and all claims, charges, complaints, liabilities or obligations of any kind whatsoever, whether known or unknown, which he may have, now has, or may hereafter claim to have arising from or related to his employment with Defendants or the termination of that employment; and release all claims relating to any pay or benefit or other consideration allegedly due in connection with his employment or separation from employment that may exist or be claimed to exist as of Defendants' acceptance of this Agreement and the consideration payable under it; and releases all claims relating to any other matter or event which may have occurred as of the effective date of this Agreement. This Release includes, but is not limited to, a release and indemnification of any and all claims, charges, complaints, liabilities or obligations under federal, state or local law, as such laws currently exist or as they may be interpreted, including all claims under or related to: the Fair Labor Standards Act; the Age Discrimination in Employment Act; the Older Workers Benefit Protection Act; Title VII of the Civil Rights Act of 1964, including all amendments; the Rehabilitation Act of 1973; the Americans with Disabilities Act of 1990 ("ADA"); the Family and Medical Leave Act ("FMLA"); the Pennsylvania Human Relations Act; the Pennsylvania Whistleblower's Act; the National Labor Relations Act; the Employment Retirement Income Security Act (ERISA); the Philadelphia Fair Employment Practices Ordinance, 42 U.S.C. 1981, Immigration Reform and Control Act; The Sarbanes-Oxley Act of 2002, The Occupational Safety and Health Act, The Americans with Disabilities Act of 1990; The Rehabilitation Act of 1973, The Federal False Claims Act; The Wage Payment Collection Law, including all amendments to the foregoing statutes; any claims for any and all damages, including damages for emotional distress and physical illness; any claims for retaliations; and/or any other statutory or common law claims now existing or hereinafter recognized, including but not limited to, breach of contract, assault, battery, libel, slander, fraud, infliction of emotional distress, wrongful discharge, demotion, defamation, breach of covenant of good faith and fair dealing, promissory estoppel, and misrepresentation, any and all claims based on "public policy," any and all federal and state wage and hour laws, any and all federal or state laws pertaining to employment or employment

benefits, and any and all other claims of any kind based on any federal, state, or local constitution, statute, law, rule, regulation, judicial doctrine, contract, or common law, or other theory arising out of any matter, act, omission, transaction, occurrence, or event that has occurred or is alleged to have occurred up to the date of this Agreement or that pertain to his employment with Defendants. Named Plaintiff acknowledges and agrees that he had the right to, and did consult with, an attorney before signing this Agreement.  Named Plaintiff is advised and acknowledges that he have twenty-one (21) days after receiving this Agreement to consider whether to sign it; and after signing this Agreement and the Release, they have another seven (7) days in which to revoke any waiver of a claim under the Age Discrimination in Employment Act ("ADEA") or the Older Workers' Benefit Protection Act ("OWBPA"), and the waiver of any claim under the ADEA or OWBPA does not take effect until those seven (7) days of ended..

     2.6.3    Named Plaintiff expressly agrees not to bring any claim or action or charge or proceeding, directly or indirectly, against Defendants or any of the Released Parties described herein relating to the terms and conditions of employment, the separation from employment, compensation or benefits or other remuneration or benefit allegedly due, or any other matter released.

     2.6.4    The Parties agree and understand that the above release does not apply to claims for breach of this Agreement or claims that are not releasable under the law.

     2.7    *Settlement Funding, Payment of Costs, Attorneys' Fees and Enhancement to Named Plaintiff.*

     2.7.1    Within five (5) days of the Effective Date, the Claims Administrator will establish a Qualified Settlement Fund ("QSF") as described in the internal Revenue Code of 1986, as amended. The Claims Administrator shall serve as Trustee of the QSF and shall act as a fiduciary with

respect to the handling, management, and distribution of the QSF, including the handling of tax-related issues and payments.

2.7.2    Within five (5) business days of the date the Claims Administrator establishes the QSF and provides Defendants the QSF transfer information, Defendants shall deliver the Maximum Settlement Amount to the Claim Administrator.

2.7.3    The Claims Administrator will make a payment of attorneys' fees and costs of $205,000.00 (subject to Court approval) by EFT to Anderson Alexander, PLLC within five (5) business days after Defendants fund the QSF. The Claims Administrator will issue a Form 1099 to Anderson Alexander, PLLC representing this payment. This payment is contingent on the Claim Administrator's receipt of a current Form W-9 from Anderson Alexander, PLLC and wiring instructions.

2.7.4    Within five (5) business days after Defendants fund the QSF, the Claims Administrator will make payment of the Enhancement Award to Named Plaintiff by EFT or check, as determined by Named Plaintiff. The Claims Administrator will issue a Form 1099 to Named Plaintiff representing this payment. This payment is contingent on the Claim Administrator's receipt of a current Form W-9 from Named Plaintiff.

2.7.5    After the end of the Claims Period, all unclaimed and uncashed amounts from the Net Settlement Amount shall revert to Defendants. Any Collective member who does not cash their Settlement Checks will be deemed to have opted-out of the Collective and will not be deemed to have released their respective claims under the agreement.

2.7.6    The Claims Administrator shall tender any unclaimed funds from the Net Settlement Amount to Defendants within fifteen (15) business days of the end of the sixty (60) day check cashing period unless otherwise agreed to by the Parties.

2.7.7    Unless otherwise expressly provided, Defendants shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Named Plaintiff, Collective Counsel, and/or any other Person who may assert some claim thereto, of any award or payment issued or made in the Litigation or pursuant to this Agreement.

2.8    *Claims Administrator.*

2.8.1    All fees and expenses reasonably incurred by the Claims Administrator as a result of procedures and processes expressly required by this Agreement shall be taken from the Maximum Settlement Amount.    The Named Plaintiff and Collective Counsel shall have no responsibility for such fees or expenses.

2.8.2    The actions of the Claims Administrator shall be governed by the terms of this Agreement.    In the event that any of the Settling Parties take the position that the Claims Administrator is not acting in accordance with the terms of the Agreement, that party's counsel shall meet and confer with counsel for the other Settling Parties prior to raising any such issue with the Claims Administrator or the Court.

2.9    *Termination or Voidance of Settlement or Agreement.*

2.9.1    To the extent this Agreement is disapproved by the Court, deemed void, or does not otherwise take effect, or if the Court in any way fails to grant binding and final approval of settlement agreement and/or dismiss the Lawsuit with prejudice, the Settling Parties reserve all rights, claims and defenses.    Named Plaintiff and Collective Counsel also agree not to argue or present any argument, and hereby waive any argument, that Defendants could not contest (or is estopped from contesting) venue and/or class or collective action certification on any grounds if this Litigation were to proceed; this Agreement shall not be deemed an admission by, or ground for estoppel against, Defendants that collective or class action certification in the Litigation is proper or cannot be contested on any grounds.

2.9.2    Unless otherwise ordered by the Court, in the event the Agreement shall be terminated, cancelled, or declared void, or fails to become effective in accordance with its terms, or if the Judgment is reversed on appeal, promptly after written notification of such event, Defendants and Collective Counsel shall notify each other of this event in writing.

2.10    *Public Comment.*

2.10.1    Prior to the filing of an initial motion for approval with the Court, the Parties agree not to disclose the terms of this settlement except in court papers filed to seek approval, except for any disclosures agreed to by the Parties and as necessary to effectuate the Settlement. Before or after approval, Named Plaintiff, the Settlement Collective, and Collective Counsel shall not issue a press release, hold a press conference, publish information about the settlement on any website or otherwise publicize the settlement. However, nothing about this paragraph shall restrict Collective Counsel from citing to or referencing this settlement in court filings, as necessary, including for purposes of seeking approval of the settlement. Named Plaintiff, the Settlement Collective, and Collective Counsel agree not to respond to any media inquiries except to refer reporters to the papers filed with the court. Nothing in this provision will affect the ability of Collective Counsel to carry out their duties consistent with and as required by any other provision in this Agreement or by the Court or affect Collective Counsel's attorney-client communications.

2.11    *Miscellaneous Provisions.*

2.11.1 No Person shall have any claim against Collective Counsel, the Claims Administrator, or counsel for Defendants based on the payments made or other actions taken

substantially in accordance with the Agreement and the settlement contained therein or further orders of the Court.

2.11.2 The Settling Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree to exercise their best efforts to obtain Court approval, secure the effectiveness of the Judgment, and implement all terms and conditions of the Agreement.

2.11.3 The Agreement compromises of claims which are contested in good faith, and it shall not be deemed an admission by any of the Settling Parties as to the merits of any claim or defense. The Settling Parties agree that the amounts paid in settlement and the other terms of the settlement were negotiated at arms-length and in good faith by the Settling Parties and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

2.11.4 Neither the Agreement nor the settlement, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of Defendants Releasees; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of Defendants Releasees, in any civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal.

2.11.5 All of the exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

2.11.6 The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

2.11.7 The Agreement constitutes the entire agreement among the Settling Parties hereto and no representations, warranties, or inducements have been made to any party concerning the Agreement or its exhibits other than the representations, warranties, and covenants contained and

memorialized in such documents.  Except as otherwise provided herein, each party shall bear its own costs and fees.

        2.11.8  Collective Counsel are expressly authorized by Named Plaintiff to take all appropriate action required or permitted to be taken by the Collective pursuant to the Agreement to affect its terms, and also are expressly authorized to enter into any modifications or amendments to, or documents or pleadings filed in support of, the Agreement on behalf of the Collective which they deem appropriate.

        2.11.9  Each counsel or other Person executing the Agreement or any of its exhibits on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

        2.11.10 The Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.

        2.11.11 The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto; but this Agreement is not designed to and does not create any third-party beneficiaries.

        2.11.12 The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement.

        2.11.13 The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against either party.  No party shall be deemed the drafter of this Agreement.  The parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the parties and their counsel.  Each party and their counsel cooperated in the drafting and preparation of the Agreement.

2.11.14 Defendants will not retaliate against Collective Members for any actions taken or not taken with respect to this settlement and will not sue the Named Plaintiff for filing the complaint in this Litigation.

2.11.15 Defendants acknowledge that Collective Counsel, and Collective Counsel acknowledge that Defendants' counsel, have complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure to this point in the Litigation, and Collective Counsel acknowledge the same with respect to counsel for Defendants.

2.11.16 Exclusive venue for any dispute arising under this Agreement, including by not limited to the enforcement of the same, shall be in the United States Court for the Eastern District of Pennsylvania. However, the Parties agree to return to mediation with Dennis Clifford prior to seeking resolution with the Court. The prevailing party is entitled to their reasonable and necessary attorneys' fees in the event further legal action is required to enforce this Agreement.

2.11.17 The parties to this agreement recognize and acknowledge that at the time of the execution of this Agreement, there are issues of law that are unresolved, which could impact the claims at issue in the Litigation absent this Agreement. The parties further recognize that they are reaching this settlement in light of the risks created by this case and all other issues of unsettled law, and that all parties will take all efforts to enforce this Agreement and obtain Court approval for this settlement regardless of any subsequent legal developments.

2.11.18 The Settling Parties and Collective Counsel agree that the proposed collectives are receiving benefit from this settlement by obtaining a settlement (and associated consideration) prior to such possible developments, and the Settling Parties and their counsel agree not to argue otherwise or seek to void this settlement or prevent court approval on the basis of any subsequent precedent.

2.11.19 The Settling Parties agree that because this is a collective action, the notice provisions of the Class Action Fairness Act of 2005 do not apply, and even if they did (which they do not), the releases contained in the Notice of Settlement to be executed by Settlement Collective Members would be separately enforceable and effective even if the Judgment were deemed non-binding.

[SIGNATURE PAGE TO FOLLOW]

**Deleted:** <#> → The Settling Parties agree that they will not discuss or disclose the Settlement and/or the surrounding circumstances of the claims on their website, issue any press release, and /or discuss the same on any social media platform. The Settling Parties will not initiate any contact with the media regarding the terms of this Settlement or the claims or defenses in the underlying litigation. In the event media contacts the Settling Parties seeking a comment on the Settlement, they shall not provide any comment or refer such questions to their counsel.¶

IN WITNESS WHEREOF, the parties hereto have caused the Agreement to be executed.

Dated:_____        _____
                                     Russell Wertz
                                     Named Plaintiff


Dated:_____        _____
                                     [NAME]
                                     Authorized Agent for Defendant Gold Medal
                                     Environmental of PA Inc.


Dated: _____        _____
                                     [NAME]
                                     Authorized Agent for Defendant Parks Garbage
                                     Service Inc.


Approved as to form:

                                     ANDERSON ALEXANDER, PLLC


                          By:        _____
                                     Collective Counsel


                                     MARGOLIS EDELSTEIN


                          By:        _____
                                     Counsel for Defendants